UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 13 |
|  | ) | Case No. 19-13634-CJP |
| WATSON PIERRE, | ) |  |
|        Debtor | ) |  |
|  | ) |  |
| WATSON PIERRE, | ) |  |
|        Plaintiff | ) | Adv. Pro. No. 21-1098-CJP |
| v. | ) |  |
|  | ) |  |
| WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE ON BEHALF OF THE HOLDERS OF THE FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF15 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-FF15 and SELECT PORTFOLIO SERVICING, INC., | ) |  |
|        Defendants | ) |  |

**MEMORANDUM OF DECISION AND ORDER**

Before the Court is the *Motion for Judgment on the Pleadings* (the "Motion") [ECF No. 53] filed by Wells Fargo Bank, National Association, as Trustee on behalf of the holders of the First Franklin Mortgage Loan Trust 2006-FF15 Mortgage Pass-Through Certificates, Series 2006-FF15 ("WF") and Select Portfolio Servicing, Inc. ("SPS") (together, the "Defendants"), by which the Defendants seek judgment on the pleadings in their favor pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on the three remaining counts pleaded against them in the *Objection to Wells Fargo's Proof of Claim and Adversary Proceeding Complaint and Jury Demand* [ECF No. 1] (the "Complaint") filed by plaintiff Watson Pierre (the "Debtor"): (i) Count I, objection to WF's Proof of Claim; (ii) Count II, claims for alleged violations of Mass. Gen. Laws ch. 93A ("Chapter 93A") related to the 2006 origination of the Debtor's mortgage

loan; and (iii) Count III, post-origination claims for alleged violations of Chapter 93A related to the Debtor's 2009 and 2015 loan modifications.[1] The Debtor filed a *Memorandum in Opposition to Defendant Wells Fargo's Motion for Judgment on the Pleadings* [ECF No. 58] ("Debtor's Opp."), WF filed a reply [ECF No. 69], and the Debtor filed a surreply [ECF No. 70]. After a hearing and upon the invitation of the Court for voluntary supplementation of their filings [ECF No. 73], both parties provided supplemental briefing. Pl.'s Suppl. Br. [ECF No. 77]; Defs.' Suppl. Br. [ECF No. 78]. Upon consideration of the pleadings, arguments made at the hearing, and the record of this proceeding, for the reasons below, I GRANT the Motion. The Debtor has not pleaded cognizable, particularized harm causally related to the alleged unfair and deceptive acts of the Defendants.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings bears a strong family resemblance to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and these two types of motions are treated in much the same way." *Kando v. R.I. State Bd. Of Elections*, 880 F.3d 53, 58 (1st Cir. 2018). To survive a motion to dismiss, a complaint must contain sufficient factual material "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a motion under Rule 12(b)(6), a court must disregard "statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." *Lemelson v. U.S. Bank Nat'l Ass'n*, 721 F.3d 18, 21 (1st Cir. 2013) (internal

---

[1] The Court previously dismissed defendant Bank of America, N.A. ("BOA") from Count II. Proceeding Mem. and Ord. [ECF No. 45].

quotation and citations omitted); *see also United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992) (the Rule 12(b)(6) standard "does not mean . . . that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized"). "Judgment on the pleadings is proper 'only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment.'" *Zipperer v. Raytheon Co.*, 493 F.3d 50, 53 (1st Cir. 2007) (quoting *Aponte–Torres v. Univ. of P.R.*, 445 F.3d 50, 54 (1st Cir. 2006)).

When considering a motion for judgment on the pleadings, a court generally may not consider matters outside of the pleadings without converting the motion to one for summary judgment under Federal Rule of Civil Procedure 12(d), absent certain "well-recognized exceptions" that are applicable here. *Best v. Nationstar Mortg. LLC (In re Best)*, 540 B.R. 1, 8 (B.A.P. 1st Cir. 2015). A court may consider "documents central to plaintiffs' claim [and] documents sufficiently referred to in the complaint" when evaluating a motion under Rule 12(b)(6). *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993) (collecting cases). A court may "also take into account . . . matters of public record, and other matters susceptible to judicial notice." *Wilson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 7 (1st Cir. 2014) (internal quotations and citations omitted). When documents contradict an allegation in the complaint, "the document trumps the allegation." *Lowenstern v. Residential Credit Sols.*, No. 11-11760-MLW, 2013 WL 697108, at *3 (D. Mass. Feb. 25, 2013) (citing *Clorox Co. P.R. v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 32 (1st Cir. 2000)).

## II. BACKGROUND FACTS PLEADED BY THE DEBTOR OR OTHERWISE NOT IN MATERIAL DISPUTE

### A. The Original Loan

On August 31, 2006, the Debtor purchased the property located at 22 Alice Road,

Randolph, Massachusetts (the "Property") by deed recorded with the Norfolk County Registry of Deeds (the "Registry") in Book 24039, Page 173. Decl. of Donald W. Seeley Jr. [ECF No. 55] ("Seeley Decl."), Ex. A. On that date, the Debtor borrowed $280,000.00 from First Franklin, a Division of National City Bank ("First Franklin") and executed and delivered an Adjustable Rate Note (the "Note"). Compl. ¶ 4; Seeley Decl., Ex. B. To secure his obligations under the Note, the Debtor granted a mortgage dated August 31, 2006 in the original principal amount of $280,000.00 (the "Mortgage," together with the Note, the "Loan") in favor of Mortgage Electronic Registration Systems, Inc. as mortgagee and nominee for First Franklin, and its successors and assigns ("MERS"), encumbering the Property and recorded with the Registry on August 31, 2006 in Book 24039, Page 175. Compl. ¶¶ 78–79; Seeley Decl., Ex. B. The Loan included an initial interest rate of 7.25% for less than three years, and the fully indexed rate was 12.65%. Compl. ¶¶ 171–76; Seeley Decl., Ex. B. The Loan also included a balloon payment due upon the Loan's maturity on September 1, 2036. Seeley Decl., Ex. B.

WF is the current holder of the Mortgage via an assignment of the Mortgage from MERS to WF dated August 5, 2009 and recorded with the Registry on August 25, 2009 in Book 27009, Page 342. Seeley Decl., Ex. C.

### B. The Junior Mortgage

The Debtor also granted a junior mortgage to MERS dated August 31, 2006, in the original principal amount of $70,000.00, encumbering the Property and recorded with the Registry on August 31, 2006 in Book 24039, Page 191 (the "Junior Mortgage"). Compl. ¶¶ 80, 194; Seeley Decl., Ex. D. The Junior Mortgage was released and discharged pursuant to a Release dated November 9, 2016 and recorded with the Registry on November 22, 2016 in Book 34693, Page 52. Compl. ¶ 80, 194; Seeley Decl., Ex. E.

**C. The 2009 Modification**

In 2009, the Debtor began having difficulty making payments after he lost his job as a driver. Compl. ¶ 201. As a result of the Debtor's payment difficulties, SPS, WF's loan servicer, offered the Debtor a modification of the Loan (the "2009 Modification"). Compl. ¶¶ 208–10. The Debtor modified the Loan terms pursuant to the 2009 Modification, which was recorded with the Registry on December 22, 2009 in Book 27321, Page 290. Compl. ¶ 211; Seeley Decl., Ex. F. By executing the 2009 Modification, the Debtor reaffirmed the mortgage debt and agreed to the new loan repayment terms. The 2009 Modification included a new principal balance of $320,171.62, a fixed interest rate of 3.125% for the first five years, followed by two incremental increases to a fixed interest rate of 4.875% for years seven through twenty-seven, and a $217,060.49 balloon payment due upon the Loan's maturity. Compl. ¶¶ 212–15; Seeley Decl., Ex. F. The monthly principal and interest payments under the 2009 Modification began at $1,085.54, increased to $1,271.58 for year six, and increased to $1,417.54 for years seven through twenty-seven.[2] Seeley Decl., Ex. F.

**D. The 2015 Loan Modification**

In 2015, the Debtor began having difficulty making payments required by the 2009 Modification. Compl. ¶ 218. SPS offered the Debtor a second modification of the Loan (the "2015 Modification," together with the 2009 Modification, the "Modifications"). Compl. ¶¶ 208–10. The Debtor modified the Loan terms for a second time pursuant to the 2015 Modification, which was not recorded at the Registry. Compl. ¶ 221; Seeley Decl., Ex. G. The 2015 Modification included a new principal balance of $357,647.28, a fixed interest rate of

---

[2] The 2009 Modification lists the Total Monthly Payment as $1,457.61, which included an Estimated Monthly Escrow Payment Amount of $372.16. Both the escrow and total amounts throughout the entirety of the modification "may adjust periodically." Seeley Decl., Ex. F.

3.375%, deferred principal balance of $98,897.28, and a $180,637.74 balloon payment due upon Loan maturity on August 1, 2031. Compl. ¶¶ 222–25; Seeley Decl., Ex. G. The 2015 Modification provided for monthly principal and interest payments of $1,033.06.[3] Seeley Decl., Ex. G. Approximately three years later, the Debtor defaulted on the 2015 Modification. Compl. ¶ 218.

### E. The Current Bankruptcy and Adversary Proceeding

On October 25, 2019, the Debtor filed bankruptcy to avoid WF's foreclosure sale of the Property. Compl. ¶ 236. WF filed a secured Proof of Claim in the amount of $390,593.62. Compl. ¶ 7; Claim No. 3-1. On November 4, 2021, the Debtor filed the Complaint, and the Defendants filed an answer [ECF No. 29]. The Defendants subsequently filed their Motion, which was taken under advisement after a hearing and supplemental briefing was filed.

Count II of the Complaint sought affirmative relief against BOA, as successor in interest to First Franklin. Compl. ¶ 14. After a hearing, the Court granted BOA's Motion to Dismiss Count II. Proceeding Mem. and Ord. [ECF No. 45]. Partial judgment entered in favor of BOA on Count II.

## III. POSITIONS OF THE PARTIES

At issue are the 2006 origination of the Loan and the Modifications. The Debtor does not dispute the fact that he received $280,000.00 to purchase the Property or that he reaffirmed the Loan debt by entering the Modifications. Instead, the Debtor claims in the Complaint that the Loan's payment terms rendered the Loan "doomed to fail." Compl. ¶¶ 5, 162, 256. The Debtor alleges various types of harm: that the Defendants' "deceptive and unfair practices caused [the

---

[3] The 2015 Modification lists the Total Monthly Payment as $1,533.79, which included an Estimated Monthly Escrow Payment Amount of $500.73. Both the escrow and total amounts throughout the entirety of the modification "may adjust periodically." Seeley Decl., Ex. G.

Debtor] to pay money on the Loan and forego other possible opportunities to buy another home and get an affordable loan that would have put him on a pathway to home ownership"; that the Debtor "wasted his money paying off" the Loan; and that the Defendants "knew their actions would result in [the Debtor] defaulting on his mortgage and suffering financial harm." Compl. ¶¶ 254, 256–59.[4] The Debtor further claims that—although the Modifications reduced the monthly payment and fixed the interest rate of the Loan—each Modification contained an "unaffordable balloon payment," which he asserts will inevitably end in default upon maturity of the Loan in August 2031. Compl. ¶¶ 270, 275. The Debtor seeks monetary damages against WF and its loan servicer, SPS, and reduction of the amount claimed in WF's Proof of Claim. Compl. ¶¶ 7–9; Claim No. 3-1.

The Defendants assert that the Debtor's affirmative Chapter 93A claims (Counts II and III) fail as a matter of law because (i) the Debtor did not file this lawsuit within four years after signing the Loan and/or Modifications, such that the Debtor's claims are now time-barred by Mass. Gen. Laws ch. 260, § 5A; (ii) the Debtor did not send a pre-litigation demand letter required by Chapter 93A, § 9(3); and (iii) with respect to Count II, that neither WF nor SPS played any part in originating the Loan, and are not subject to an affirmative Chapter 93A claim related to the Loan's origination. The Defendants also contend that the Debtor's objection to claim (Count I) fails because (i) prior to defaulting on the Loan, WF modified the Debtor's loan terms to reduce the Debtor's monthly mortgage payment and provide a fixed interest rate, such that the modified terms cannot be characterized as unfair, deceptive or unaffordable under prevailing Massachusetts law; and (ii) the Debtor's claim that he may default on an August 2031

---

[4] In the Debtor's Opposition, the Debtor further qualifies his harm: "This injury is not speculative. [The Debtor] has in essence been paying 'rent' to [WF] for his home rather than mortgage payments, as he will never be able to pay off the loan other than by selling his home if there is any equity. Otherwise, he will have to face foreclosure or agree to a deed-in-lieu." Debtor's Opp. at 9.

7

balloon payment is purely speculative and fails to assert a separate, identifiable harm. Accordingly, Defendants are entitled to judgment on the pleadings alone.

The Debtor asserts that he has alleged sufficient facts to state a claim and the Defendants have not put forth uncontested facts that could conclusively establish the Defendants' entitlement to judgment. The Debtor asserts that WF may be held liable under Chapter 93A even where it was only the assignee of the originating lender where the originating lender's conduct constituted an unfair and deceptive practice. The Debtor states that a lender is liable under Chapter 93A for the "origination of a home mortgage loan that the lender should recognize at the outset that the borrower is not likely to be able to repay," *Drakopoulos v. U.S. Bank Nat'l Ass'n*, 465 Mass. 775, 786 (2013) (quoting *Commonwealth v. Fremont Inv. & Loan*, 452 Mass. 733, 748–49 (2008) ("*Fremont*")), and alleges that the originating lender should have recognized that the Debtor would not likely be able to repay the Loan. Similarly, the Debtor asserts that the balloon payments contemplated by the Modifications suffer from the same infirmities. Finally, the Debtor asserts that his damages are not speculative because he submits that he will not be able to pay the balloon payment when it becomes due based on his current income and expenses and that it should be established at trial whether damages arising from alleged unfair lending practices have been mitigated by the payment relief afforded by the Modifications.

### IV. ANALYSIS

#### A. While Claims for Affirmative Recovery Are Barred by the Statute of Limitations, the Debtor's Claims for Recoupment as an Objection to WF's Proof of Claim Are Not

SPS and WF are entitled to judgment in their favor on Count II and Count III for violations of Chapter 93A to the extent that those claims seek an affirmative recovery because the Debtor's claims are time-barred by the four-year statute of limitations under Chapter 93A.

*See Rita v. Carella*, 394 Mass. 822, 823 (1985); *see also Linn v. Option One Mortg.*, No. 1:22-CV-11535-IT, 2024 WL 199784, at *3 (D. Mass. Jan. 17, 2024) ("The limitations period for chapter 93A actions is four years from injury." (quoting *Latson v. Plaza Home Mortg., Inc.*, 708 F.3d 324, 326 (1st Cir. 2013))). Claims concerning loan origination accrue at the inception of the loan. *O'Brien v. Deutsche Bank Nat'l Tr. Co.*, 948 F.3d 31, 35 (1st Cir. 2020). "Th[is] conclusion is consistent with 'the Massachusetts rule that the terms of written agreements are binding whether or not the signatories actually read them.'" *Id*. (quoting *Latson*, 708 F.3d at 327).

Here, the Debtor executed the Mortgage in August 2006. Seeley Decl., Ex. B. The Debtor executed the 2009 Modification in December 2009. Seeley Decl., Ex. F. The Debtor executed the 2015 Modification in July 2015. Seeley Decl., Ex. G. The Debtor did not file this lawsuit until November 4, 2021. Compl. Because the Debtor is bringing this claim over fifteen years after originating the Loan, and six years after signing the most recent Modification, the Debtor's Chapter 93A claims for affirmative recovery against SPS and WF are untimely. *See O'Brien*, 948 F.3d at 35.

In the mortgage lending context, Massachusetts courts have concluded that equitable tolling does not apply because "[r]easonable inquiry, such as reading the documents, would have revealed the terms of the loan." *Broderick v. PNC Fin. Servs. Grp.*, 919 F. Supp. 2d 178, 181 (D. Mass. 2013), *aff'd*, 554 F. App'x 27 (1st Cir. 2014); *see also O'Brien*, 948 F.3d at 35 ("[t]he four-year period [under Chapter 93A] began to run on the signing date when the interest began to accrue." (quoting *Latson*, 708 F.3d at 327)). Both claims fail because the Debtor does not deny signing the loan documents at issue in this case. Compl. ¶¶ 69–77, 211, 221. The discovery rule tolls the statute of limitations only where injuries are "inherently unknowable" when they occur. *Latson*, 708 F.3d at 327. The discovery rule does not apply, however, to cases like this

one, in which the loan terms are readily apparent from the loan documents themselves. *See id.*; *see also Linn*, 2024 WL 199784, at *4 ("Here, where Plaintiff's 93A claims arise from her 2004 mortgage, the loan documents contained the information reasonably necessary to put [Plaintiff] on notice of her claim. Under Massachusetts law, Plaintiff is presumed to have been on notice for the contents of the 2004 mortgage when she signed it." (internal quotation and citation omitted)).

While affirmative recoveries on account of the Chapter 93A claims asserted in Count II and Count III may be time-barred, those claims may be viable in support of the Debtor's objection to WF's Proof of Claim in Count I on the basis of recoupment.[5] As to the claims based on the acts of the originating lender, the normal rule that an assignee will not be held liable for the acts of an assignor would not apply:

> Even where the unfair or deceptive acts were committed wholly by an assignor, based on common-law principles of assignee liability, assignees may be liable under [Chapter] 93A for equitable remedies such as cancellation of a debt or rescission of a contract. *See* [*Ford Motor Credit Co. v. Morgan*, 404 Mass. 537, 540, 545–46 (1989)] (judge did not err in ordering counterclaims, including counterclaim brought under [Chapter] 93A, § 2, to be used only defensively to extinguish assignee creditors' claim for remaining debt).

*Drakopoulos*, 465 Mass. at 787 n.16; *see also Creutz v. U.S. Bank (In re Creutz)*, No. 17-11933-MSH, 2021 WL 1397236, at *6 (Bankr. D. Mass. Apr. 12, 2021) ("It is well established under Massachusetts law that an assignee ordinarily cannot be held liable for damages based upon the

---

[5] The Debtor uses the term "setoff" in Count I as a basis to offset "counterclaims" against any claim of the Defendants. Compl. ¶¶ 238-39. In the introduction to the Complaint, he states that he "seeks to reduce the amount claimed on his Loan to $0.00 through recoupment, equitable and declaratory relief, actual and statutory damages, including attorney's fees and costs based on the Defendants' unlawful practices." Compl. ¶ 8. Because the unfair lending practices claims arise from the same transaction as the Loan, any offset or equitable relief would be in the nature of recoupment, and the Court construes the request for relief as to Count I as a request for recoupment.

In addition to seeking "any actual, statutory and punitive damages, doubled or trebled, along with reasonable attorneys' fees and court costs as allowed by law and as consistent with applicable recoupment doctrines," the Debtor asks in the Complaint's Prayer for Relief for the Court to "[r]escind the Loan," Compl. at 30. The Debtor does not specify the basis for that request, and the Court interprets that request as a request for relief under the Chapter 93A claims. However, the Debtor "may not assert a claim for rescission in recoupment under Chapter 93A." *Sheedy v. Deutsche Bank Nat'l Trust Co. (In re Sheedy)*, 801 F.3d 12, 23 (1st Cir. 2015). Other equitable remedies may be available to the Debtor against the assignee after expiration of the statute of limitations through recoupment.

acts of its assignor. . . . Nevertheless, under the common law principle that an assignee stands in the assignor's shoes, 'assignees may be liable under [Chapter] 93A for equitable remedies . . . .'" (quoting *Drakopoulos*, 465 Mass. at 787 n.16)).

Where a Chapter 93A claim is asserted defensively, the Debtor need not have sent a written demand. Chapter 93A, § 9(3) ("The demand requirements of this paragraph shall not apply if the claim is asserted by way of counterclaim or cross-claim[.]"); *see Furrier v. Liberty Home Equity Sols., Inc. (In re Furrier)*, 611 B.R. 491, 495 (Bankr. D. Mass. 2020) ("the counterclaim exception applies" where a debtor asserts "a counterclaim to the proof of claim"). Setting aside the issue of damages, significant facts have been alleged that, if proven, could support the Debtor's claims that the terms of the Loan and possibly the Modifications were unfair and constituted violations of Chapter 93A and a basis to reduce or disallow the Defendants' claim. *See Moronta v. Nationstar Mortg., LLC*, 88 Mass. App. Ct. 621, 627 (2015), *aff'd*, 476 Mass. 1013 (2016) ("'[L]oans to borrowers who do not demonstrate the capacity to repay the loan, as structured, from sources other than the collateral pledged are generally considered unsafe and unsound' and unfair to borrowers." (quoting *Fremont*, 452 Mass. at 744)).

The Debtor argues that a loan must be structured at origination such that a homeowner can reasonably pay off the loan other than by selling the family home. *Moronta*, 88 Mass. App. Ct. at 627. The Massachusetts Supreme Judicial Court in *Fremont* put forward four characteristics or "factors" that render loans presumptively unfair pursuant to Chapter 93A.[6] 452 Mass. at 739; *Moronta*, 88 Mass. App. Ct. at 626–27. No single factor is dispositive, nor must

---

[6] "(1) the loans were [adjustable rate mortgage] loans with an introductory rate period of three years or less; (2) they featured an introductory rate for the initial period that was at least three per cent below the fully indexed rate; (3) they were made to borrowers for whom the debt-to-income ratio would have exceeded fifty per cent had [the lender] measured the borrower's debt by the monthly payments that would be due at the fully indexed rate rather than under the introductory rate; and (4) the loan-to-value ratio was one hundred per cent, or the loan featured a substantial prepayment penalty (defined by the judge as greater than the 'conventional prepayment penalty' defined in [Mass. Gen. Laws ch.] 183C, § 2) or a prepayment penalty that extended beyond the introductory rate period." *Fremont*, 452 Mass. at 739.

11

all four factors be met. *Moronta*, 88 Mass. App. Ct. at 627–28; *Drakopoulos*, 465 Mass. at 787 ("Nothing in our decision in *Fremont* . . . was intended to suggest that the universe of predatory home loans is limited only to those meeting the four criteria present in that case."). The essence of the court's inquiry is whether the lender recognized the homeowner's inability to repay the loan at origination. *Frappier v. Countrywide Home Loans, Inc.*, 645 F.3d 51 (1st Cir. 2011) ("*Fremont* [held] that Chapter 93A prohibits 'the origination of a home mortgage loan that the lender should recognize at the outset the borrower is not likely to be able to repay.'" (quoting *Fremont*, 452 Mass. at 749)).

Here, the Debtor asserts that, at origination, the originating lender knew or should have known that, other than by refinancing the Loan or selling the home, the borrower would be unable to make the fully indexed monthly payments or the large balloon payment at the end of the term. The Debtor alleges that his loan was approved and issued without serious consideration of his ability to repay the loan in full. Compl. ¶¶ 126–61. He alleges that he provided documentation of his income and assets that the mortgage broker requested including his prior year's tax return and that the mortgage broker provided copies of that documentation to the originating lender. Compl. ¶¶ 61–62. The Debtor alleges that, notwithstanding this, the loan file produced by the Defendants does not contain any documentation of the Debtor's income. Compl. ¶¶ 117, 129–45. The Debtor further alleges that his income at the time of origination was $2,355 per month and the Loan had a debt-to-income ratio of 74%. Compl. ¶ 168–69.

Initially, the Loan included a balloon payment of $219,000. Compl. ¶ 180. When the loan was modified in 2009, it provided for a balloon payment of $217,000. Compl. ¶ 215. In 2015, the Loan was modified again, and the balloon payment increased to $279,532. The Debtor notes that the modified balloon payment was then almost identical to the amount financed at origination, Compl. ¶¶ 227, 233, and that, over the term of the Loan, "under the best case

12

scenario, he would have made all mortgage payments, maintained his home, paid taxes and insurance only to have to sell or refinance the home to pay the balance at the end of the loan term," Debtor's Opp. at 7. The Debtor asserts that, "when the balloon payment is factored into the equation, a trier of fact might well conclude that First Franklin should have recognized that [the Debtor] was unlikely to be able to repay the loan as structured." Debtor's Opp. at 7 (citing *Moranta*, 88 Mass. App. Ct. at 628).

Even where *Fremont* factors and other factors recognized by Massachusetts courts as demonstrating unfair lending practices are present, the Debtor must still "prove that the loan was unfair or deceptive [to the Debtor] in the specific circumstances in which it was made." *Charles St. African Methodist Episcopal Church of Bos. v. OneUnited Bank (In re Charles St. African Methodist Episcopal Church of Bos.)*, 574 B.R. 402, 405 (Bankr. D. Mass. 2017). The Defendants assert that the Debtor has not alleged that the Loan or the Modifications were unfair based on his particular circumstances. They note that the Debtor made payments under the original Loan terms for approximately three years, made payments under the 2009 Modification for approximately five years, and made payments under the 2015 Modification for approximately three years, during which time he paid off the Junior Mortgage. Compl. ¶ 208, 218, 236; Mem. of Law in Supp. of Def.'s Mot. for J. on the Pleadings [ECF No. 54] ("Def.'s Mem. of Law in Supp. of Mot."), 13–14; Claim No. 3-1; Seeley Decl., Ex. E.

Notwithstanding the fact that the Debtor made those payments, there are sufficient facts alleged regarding the Debtor's actual income and the necessity for him to seek the Modifications, which, if proven, could support a finding that the Loan was unfair under Massachusetts law under his particular circumstances. Specifically, the Debtor alleges the Loan included an adjustable rate mortgage with an introductory rate period of three years or less, the introductory rate was 5.4% below the fully indexed rate, and the debt-to-income ratio was 74% at time of

origination, Compl. ¶¶ 163–75, meeting the first three *Fremont* factors. *See Fremont*, 452 Mass. at 739; *see also Moronta*, 88 Mass. App. Ct. at 627–28 (finding borrower met the first, second, and possibly the third *Fremont* factors).[7] Reserving for discussion below whether the Debtor has sufficiently alleged that he suffered damages arising from the alleged unfair lending practices, the Defendants have not met their burden to show that uncontested facts conclusively establish the Defendants' entitlement to a judgment based on the pleadings with respect to the alleged unfair and deceptive acts.

### B. The Debtor Fails to Plead Separate Identifiable Harm and Causation

"[A] plaintiff seeking a remedy under [Chapter] 93A, § 9, must demonstrate that even a per se deception caused a loss." *Hershenow v. Enterprise Rent-A-Car Co. of Bos.*, 445 Mass. 790, 798 (2006). "[T]he unfair or deceptive act or practice must cause the consumer some kind of separate, identifiable harm arising from the violation itself." *Brown v. Bank of Am., Nat'l Ass'n*, 67 F. Supp. 3d 508, 514 (D. Mass. 2014) (quoting *Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 503 (2013)). Although case law "on the types of damages that are cognizable under Chapter 93A continues to evolve," *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 241 (1st Cir. 2013) ("*Young I*"), "the jurisprudence . . . leaves much to be desired by way of clarity," *Ferreira v. Sterling Jewelers, Inc.*, 130 F. Supp. 3d 471, 478 (D. Mass. 2015) (compiling cases); *see also Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 7 (1st Cir. 2017) ("Many courts—both state and federal—have struggled to explain what constitutes an injury under Chapter 93A.").

In cases involving residential mortgages, courts have described a variety of injuries that, if sufficiently articulated, survive dismissal under Rule 12(b)(6). *See, e.g.*, *Moreira v.*

---

[7] With respect to the fourth *Fremont* factor, although the original Loan balance was only 80% of the Property's purchase price ($280,000 loan to $350,000 value), Compl. ¶¶ 40, 62, adding the Junior Mortgage balance ($70,000) could create a loan-to-value ratio of 100%, Compl. ¶¶ 195–96. *See In re Creutz*, 2021 WL 1397236, at *7 ("For purposes of the fourth *Fremont* factor, although the loan-to-value ratio was not 100% as in *Fremont*, I find that a 90% loan-to-value ratio meets the test, given the facts of this case.").

*Citimortgage, Inc.*, No. 15-13720-LTS, 2016 WL 4707981, at *4 (D. Mass. Sept. 8, 2016) (allegations of "increased debt on [plaintiff's] loan, damage to his credit score, increased fees on his loan, costs associated with the various loan modification applications . . . suffice at [the motion to dismiss] stage"); *Sullivan v. Bank of New York Mellon Corp.*, 91 F. Supp. 3d 154, 175 (D. Mass. 2015) ("negative impact [on plaintiffs'] credit ratings [and] the threatened loss of the equity they have built up in their home"); *Brown*, 67 F. Supp. 3d at 517 ("increased interest rate, loss of the opportunity to refinance, and the forced sale of [plaintiff's] home"); *Young I*, 717 F.3d at 241 (finding "(i) Potential Loss of any built up equity . . . (2) damage to [plaintiff's] credit rating and her ability to obtain loans or credit in the future, and (3) an increase in interest rates she will have to pay on any existing or future loans and credit card accounts" were not too speculative); *see also Smyth v. Am.'s Servicing Co.*, No. CV 14-13472-MLW, 2017 WL 1190374, at *19 (D. Mass. Mar. 30, 2017) (denying mortgage lender's motion for summary judgment where plaintiffs alleged "lost wages and costs associated with perfecting their [loan modification] application"). Legal expenses alone do not constitute a cognizable harm under Chapter 93A. *See Young v. Wells Fargo Bank, N.A.*, 828 F.3d 26, 34–35 (1st Cir. 2016) ("*Young II*"); *Cranmore v. Wells Fargo Bank, N.A.*, No. CV 16-10504-MLW, 2019 WL 13219790, at *11 (D. Mass. Mar. 29, 2019). However, "[t]he injury cannot involve merely the possibility or risk of harm; instead the plaintiff must establish a distinct injury." *In re Creutz*, 2021 WL 1397236, at *5 (citing *Shaulis*, 865 F.3d at 10).

The Debtor alleges that he was damaged by the acts of the Defendants in several ways. First, he claims that he "pa[id] money" on the Loan that was doomed to fail, maintained his home, and lost the "other possible opportunities to buy another home and get an affordable loan that would have put him on a pathway to home ownership." Compl. ¶¶ 254–56. He claims that failing to make monthly payments required by the Loan caused him "financial harm," Compl. ¶

15

257, but he does not specify that harm. The Debtor also claims that the originating lender and the Defendants should have known that he "would likely be unable to pay the balloon payment [under each of the original Loan and the Modifications] when it was due and would likely default" and suffer "financial harm," Compl. ¶¶ 243, 270, 273–75, but does not state specifically what damage he has or will suffer. I can infer that the damage alleged would be the loss of his home and, similar to the damages alleged in connection with required monthly payments, amounts he has paid in interest on the Loan, as modified, and to maintain his home. The Defendants assert that these allegations are insufficient in that they are speculative and do not identify any separate, identifiable harm.

The Defendants rely on *In re Creutz*, where a debtor borrowed funds from the mortgagee to pay off his original mortgage and other bills and objected to his mortgagee's proof of claim, asserting a recoupment claim on the grounds that the underwriting and origination of his mortgage loan violated Chapter 93A. 2021 WL 1397236, at *1–3. The debtor sought economic damages in the form of additional amounts the debtor was obligated to pay pursuant to the allegedly unfair loan terms. *Id*. at *8. He presented evidence from an expert that estimated the loan "cost" the debtor $182,254 more in principal and interest payments than if he had remained with his original mortgage lender and received a loan modification. *Id*. at *8. That court overruled the debtor's claim objection and allowed the mortgagee's claim in full. *Id*. at *8–9. In doing so, it concluded that the debtor failed to set forth a separate, identifiable injury caused by the alleged unfair loan terms. *Id*. The court also noted that the debtor had not paid the full loan balance and had modified the terms of his loan several years after origination. *Id*. at *8.

The Debtor contends that the injury he alleges is not speculative. He asserts that he "has in essence been paying 'rent' to [WF] for his home rather than mortgage payments, as he will never be able to pay off the loan other than by selling his home if there is any equity. Otherwise,

16

he will have to face foreclosure or agree to a deed-in-lieu." Debtor's Opp., at 9. The balloon payment however is not due until August 2031. Citing *In re Creutz*, the Defendants assert that the "Debtor's opinion as to his ability to pay a future balloon payment is exactly the type of speculative harm that warrants dismissal of a recoupment claim." Def.'s Mem. of Law in Supp. of Mot., at 16; *see In re Creutz*, 2021 WL 1397236, at *8 and n.11.

With some reluctance, I agree that under these facts and circumstances the damages alleged are too speculative to state a claim under Chapter 93A that would allow recoupment. While there are a number of factors present that could support a determination that the Loan was unfair and deceptive under Massachusetts law, an essential element of a Chapter 93A claim is that the Debtor must have suffered an identifiable harm. Any harm suffered by the Debtor before the Modifications is inadequately stated and appears to have been mitigated by the Modifications. *Compare Moronta*, 88 Mass. App. Ct. at 624, 628 (default preceded any interest rate increase and refinancing at least a question in a declining market), *with In re Creutz*, 2021 WL 1397236, at *8 (default occurred after loan modification that reduced interest rate and re-capitalized arrearages). The damages that might arise from the large balloon payment are speculative and are not directly related to the Debtor's current default. While the Debtor asserts that he never knew of a balloon payment, the documents clearly stated that there was a substantial balloon payment. Damages need not be stated with mathematical certainty and "lost opportunity" damages may certainly be claimed, but the Debtor did not allege any specific opportunities had been lost—instead alleging speculative damages that may have arisen in 2031 had he not defaulted on the substantially reduced payments required by the Modifications. The factors that would have to be considered in assessing whether the Debtor would be damaged by a balloon payment that would become due in 2031 cannot be adequately determined. Whether the real estate market will continue to rise, whether interest rates in 2031 would adversely affect the

17

Debtor's ability to refinance, whether the Debtor would have sufficient income or assets in 2031 to repay or refinance the loan are all factors that would have to be considered and cannot be with any degree of certainty today.  As such, the Debtor's claim to have been damaged is too speculative and does not allege separate, identifiable harm necessary to state a Chapter 93A claim that would be a basis for recoupment.

While the Debtor has attempted to allege identifiable harms, such as imminent foreclosure, lost opportunity for home ownership, or the Debtor's general likelihood to default on the Loan or the terms of the Modifications, Compl. ¶¶ 242–45, 254, 257–59, 267–68, 273–74, the Complaint fails to draw a causal connection between such harm and the alleged unfair conduct of the Defendants.  "[C]ausation—both 'factual' and 'proximate'—is a required element of a chapter 93A claim." *Small Justice LLC v. Xcentric Ventures LLC*, 873 F.3d 313, 325 (1st Cir. 2017).  "[T]he plaintiff must show 'a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception.'" *Ferreira*, 130 F. Supp. 3d at 478 (quoting *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 630 n.12 (2008)).

As discussed, if the harm associated with the Debtor's initial default on the Loan was caused by the unfair or deceptive conduct of the Defendants, the Modifications seemed to mitigate, rather than cause, additional harm.  After the Debtor struggled to make payments under the original terms of the Loan, the Defendants offered the Debtor two Modifications that lowered the monthly mortgage payments and fixed the interest rate.  Despite the more affordable payment terms, the Debtor still defaulted and faced foreclosure.  Compl. ¶ 236.  The Debtor does not allege the modified payment terms caused his default or any other cognizable harm to the Debtor.  Instead, the Debtor asserts throughout the Complaint that simply because the Modifications included balloon payments, the Debtor "would likely be unable to pay the balloon payment when it was due and would likely default."  Compl. ¶ 243; *see also* Compl. ¶¶ 267–68,

18

273–74. Although the balloon payment might be unaffordable at some point in the future and might have influenced the Debtor to file his bankruptcy petition,[8] the Debtor fails to plead any facts that demonstrate the balloon payment was the *cause* of the Debtor's imminent foreclosure or any other cognizable harm.

V. CONCLUSION

For the reasons stated above, the Motion is GRANTED, and the objection to the Proof of Claim is overruled. Judgment will enter in favor of the Defendants.

By the Court,

Dated: July 23, 2024

Christopher J. Panos
United States Bankruptcy Judge

---

[8] "When [WF] informed [the Debtor] that it was foreclosing on his home, he filed a Chapter 13 bankruptcy to save his home and raise these origination claims against the current holder of his mortgage note." Compl. ¶ 236.